Good morning and may it please the court. I'm Tucker Mealy from Council Baradell in Annapolis, Maryland, and I'm here on behalf of the appellants in the case. Counsel, it's up to you. If you would like to remove your mask to argue, you certainly can. Thank you. If you don't mind, I will. We can hear it a little bit better when you do that. I forgot it was even on. As I was saying, I'm here on behalf of the appellants in this case, Chris Brusznicki, Jeffrey Polk, and Thornton Allen LLC. Mr. Brusznicki is a resident of the state of Illinois and an honorably discharged member of the U.S. Army. Mr. Polk is also from Illinois and a seasoned tax sale attorney who regularly participates in tax sales throughout the state of Maryland. Their case concerns a challenge to a law enacted by the Maryland General Assembly. Is the Thornton Allen LLC, is that a cognizable plaintiff in a privileges and immunities case? I don't believe that was addressed in the case below. I know there's some case law that talks about how if it's a corporation that doesn't have a cognizable claim under the privileges and immunities clause. But I think with respect to Mr. Brusznicki and Mr. Polk, they do. So I think that's always been the focus of the case. Okay. Their case concerns a challenge to a law enacted by the Maryland legislature which discriminates against non-residents of Maryland by prohibiting them from participating in certain tax sales in Prince George's County. In 2017, the legislature amended Maryland Code Tax Property Article 14-817, which is one of the statutes governing the procedures by which counties in Maryland shall offer tax sale certificates for sale to the general public for delinquent real property taxes. The 2017 enactment added a provision, Subsection D, which is only applicable to Prince George's County. And it required that county to hold a limited auction before a main public auction. A limited auction is only open to certain categories of individuals, which generally included citizens of Prince George's County, those employed by the federal government or a branch of the Prince George's County government, or honorably discharged veterans. And then to close any loophole to a non-resident's participation in a limited auction, the General Assembly also amended Section 14-821 of the Tax Property Article to preclude the assignment of tax sale certificates from limited auctions to non-residents. Generally speaking, throughout today, I'll refer to this as the limited auction statute, if that's okay. Now, our position in this case is that the statute discriminated against non-residents. Under the amended statute, the tax sales in question would be only those that relate to abandoned property? Yes. So, the original statute applied to all public auctions. And it was amended so that it now applies to abandoned properties. And they also essentially amended the provisions that Judge Mazzetti severed below and made it so that veterans had to be employed in Prince George's County and federal employees had to have their offices in Prince George's County. You have not made a specific claim under the statute as revised, as opposed to the original statute. Is that correct?  The State is raising the issue that the appeal is moot. I would contend that it's not because for the case to be moot, I think that the amendment would have to substantially alter the statute so that the offending provision was no longer applicable. And the offending portion of the statute is still there. How would you distinguish this case, say, from our decision in the Central Radio case, where the circumstances were somewhat similar and we determined to send the case back to the District Court to determine in the first instance what the arguments would be under the revised statute? And I don't have the facts immediately available to me on the Central Radio case, but I think in this case, I don't think that the amendment would change the analysis of the court below. The State certainly hasn't made an argument that the statute has changed fundamentally, that the analysis of the court below would change. And I would argue for judicial economy, I think that it would be... Is there an argument that your plaintiffs now can participate in the limited auction? No. They are in the same position they were before, right? Exactly. That they are still prohibited. And part of that is because the remedy the District Court granted here didn't relate to your claim. Frankly, I guess that issue is somewhat moot now because the statute has been amended in that regard. It's interesting because usually when you see severance of a provision, it's the offending provision. And what the judge did was essentially sever the provision, which made the statute essentially inconsistent with respect to... Right. The part of the statute that undermined the State's stated rationale, he struck it as violating the Privileges and Immunities Clause, which seems quite odd, right? Because those were statutes that permitted out-of-staters to participate in the limited auction. Frankly, it permitted Mr. Bresnicki, my client, to participate. And so it effectively amended the statute to make it more protectionist. Exactly. But you agree that part of the decision is moot now, given that the State has adopted the rationale and also made the statute more protectionist than it was before. Yeah, what the State did was, I guess, well, he had removed it completely as it concerned federal employees. So to bring them back into the fold, they limited their participation if they are working in the county. Can I, and I'll turn it back, but can you talk to me a little bit about McBurney? And what I'm sort of curious about is why this case is not McBurney. I want you to help me understand why McBurney doesn't apply, right? That's a case where it talked about whether the clear aim of the statute was a direct prohibition or restriction on a commercial activity. And I take your colleague's argument to be that this isn't that. And help me understand why their argument to the contrary is wrong. Well, essentially, if we're talking about the first prong of the privileges and immunities analysis, you know, you're not asking us, I mean, our first argument to that is that that argument is waived. Right, I want to talk about the actual merits. You understand that. But it's, we're talking about a common calling. I mean, not that this is an argument, but they refer to my clients as investors. This is a profession. And we would argue that that is one of the fundamental rights that was impacted. But as the judge found below, it's also the fundamental right of being able to acquire property. So what is the common calling that you're asserting? Right, because in McBurney, the plaintiff there asserted that his common calling was filing FOIA requests. Right, and the court rejected that. And so I presume that Maryland here would argue that the common calling can't be buying tax liens. It instead is buying all property. And so you're not prohibited from buying all property because you can buy M&Ms at the grocery store. Right, so why is that? The common calling, I think, is, well, twofold. There's two aspects to this common calling. One is, I mean, my client is one of the largest tax, they're one of the largest tax sale buyers in the state of Maryland. And they operate all around the country. And the way it works is that there's two ways that it is a, you know, viable business. One is that when you purchase a tax lien, there's a right of redemption. With that right of redemption comes. So which, so we're sure, which of your clients is the largest buyer? Well, I should clarify. Mr. Polk represents the largest tax sale buyer, and he participates in tax sales throughout the state of Maryland. So he's an individual that works with a group. Yeah. And what they do is buy tax liens. And even if they weren't, the way it works or the way that it's a common calling is that you invest in the lien. And it's not, you know, I'm not sure how a FOIA request is a way of making a living. But in this regard, you buy a tax lien, and the owner of the property to redeem needs to not only pay off the lien, but also pay a high interest rate. And so it can be very profitable for people who invest in these tax sales. So your argument is that Mr. Brusnicki and Polk are in the trader business, the common calling, of acquiring these tax certificates at the county or city tax sale. Where in your complaint have you pled that either one of them had a common calling or a trader business? If I can address that in my rebuttal so I can go through and address that. I can tell you. I've read through it, and I don't see that you ever pled that. Okay. And to the extent that it's required to be pled, I know it was addressed in our pleadings or motions and responses in the court. And with respect to the second part of this is the acquiring of property, that's the second part is you can acquire property. And sometimes at a lower than fair market value because you're bidding on it, and you can acquire property that way. And I think that's what Judge Massetti focused on when he found that that was the fundamental right that was impacted. Let me ask you this question. I guess you would agree that owning personal property is a fundamental right. If that's true, why isn't this lien personal property? It is, Your Honor. Thank you. It absolutely is personal property. It's assignable. And that's where 14821 comes in is it's an assignable personal property right. If we buy that argument, what does it do to your case? What does it do to my case? Yeah. Well, I mean, again, I think that the issue was decided below, and I don't think it was challenged on this appeal. But I also think the judge was right, and I think that only bolsters our argument. I got lost there. What bolsters your argument? He said if acquiring personal property is a fundamental right, then if the statute is prohibiting my clients from engaging in that practice, then that would bolster our argument that the statute is discriminating against. Right. Okay. I got you. Do we think of – I guess I just want to make – do we think about those as different? I mean, oftentimes we think about a common calling like being a lawyer, right, and it's got a whole story. But an investor's common calling is the buying and selling of whatever it's investing in. I mean, it's a little bit hard to distinguish those two, isn't it? A little bit. And, you know, Judge, I know you asked if we specifically say, you know, they're engaged in a common calling. We don't say that, but we do say that we're engaged in that in tax sales, and we talk about what we do. So it's not explicitly stated, but I think it's inferred from the allegations. Yeah, but it all is intertwined. And, you know, I see I'm running out of a few minutes, so I just want to hit a couple other points if that's okay, unless you have other questions about that issue. So the second prong is, I think, where the lower court got it wrong. Judge Macedi found that the aim of combating abandoned houses, encouraging home ownership, was a worthy right. And I agree with Judge Macedi. I think it is. But that's not where the analysis ends. The next step in the analysis is you have to find that there's a substantial reason for the discrimination against nonresidents. Put another way, are the nonresidents the source of the particular evil that the statute is aimed to address? Just to be clear, you think he got the first part wrong, too, right? No, I think he got it wrong in respect to disagreeing with us about a common calling. I don't take issue with the fact that he found that it was a fundamental right of real property. I'm not going to – I don't disagree with that. You just said it was personal. Is it real property or personal property? It's both. I mean, it really is both. I mean, because the certificate is personal property, but then it converts to real property when you foreclose the lien. But where he got it wrong in the second part is he found that the state interest is a valid one, and that's true. I don't think anyone disagrees that that's a valid interest. But he didn't find the nexus between the nonresidents and the cause. The state essentially concedes this in their brief. They say the evil is abandoned houses. It's blight. They even say that tax sale purchasers, in some regard, perform a community service. And the cases that we cite, the Toomer case, the Hickman case, the case with the Virginia bar case, they all involve – – nonresidents in the issue that the statute was aimed to address. And there's simply no evidence in the record that was presented to support that finding. I don't think the judge even made that finding, but if he did, I think he erred. Even the Attorney General himself – this is what they cite as evidence in the record to support the statute. It's the Attorney General casting doubt on the statute in his memo to the governor. He's saying that there's a reason for – you want people to work in the county that they – or live in the county where they work. Well, they took out the provision that requires you to be a resident or requires you to reside in the house that you're buying. So what's the connection? And then the other thing he pointed out was that before this, the tax sales were great. It was very successful. So there's really no evidence that shows that the non-state residents are the cause of any of the issues that the statute's aimed to address. And I think that's the critical piece that's missing and why the judge should be reversed below. And unless you have questions, I'll reserve the rest of my time for rebuttal. Thank you very much. Mr. Fine, we'll hear from you. May it please the Court. My name is Justin Fine. I'm an Assistant Attorney General with the State of Maryland. And I represent the appellee, Brian Frosch, the Attorney General of Maryland. Section 14817D of the tax property article is a constitutional response to the blight of abandoned properties in Prince George's County. Under that law, the county's residents and certain people who work there have the first opportunity to purchase tax liens to abandoned properties because the people who live and work in the county have the greatest incentive to improve their community. Can you stop there? So I understand you just said that, right? That, like, local people have the greatest incentive to develop. What is the evidence in the record that that's true? You might think it's, like, actually backwards. But just what is the – what do I look at to, like, substantiate that claim? Well, first of all, under the district – in the District Court of Maryland, there is case law, Sally v. Tax and Sale Investors, that community revitalization, community improvement is a substantial reason. Oh, I agree with that. The question is, why are local people better at it than foreign people, aliens? Non-residents, yes. Well, because they live there. They work there. I don't want your opinion. This is no disrespect to you, right? Like, you're a very smart guy. I want to know what the evidence is for that. The record is thin in that regard, Your Honor. We have letters from delegates who supported the enactment saying that this was an issue and we needed to promote residents to buy these properties. Do they create this nexus between being – I get – everybody says community redevelopment is great. I'm – listen, I'm in favor of it. Nobody's against community redevelopment. The question is, why is non-development and evil being caused by non-residents? So we have those letters in the record, and when the court is analyzing the second test – Why are they cognizable evidence, though? I mean, those are just the opinions of some legislators. There's no factual, empirical evidence that I've seen that this thesis is correct. Could make – may very well be. But I don't see anything in the record that acts as proof as opposed to lay opinion. Well, these legislatures – they're legislators, so I would say that they're more than just lay opinion. They're politicians and lawmakers. They live in the county. They represent their residents. You're pandering to Judge Agee, right? And not only that, but the court, when it's considering the substantial reason and the nexus, it grants considerable leeway to governments in analyzing local evils and prescribing appropriate cures. Have you ever heard – have you heard the term NIMBY? Like, not in my backyard? Of course. Have you ever heard of local government – or local nonprofit groups or local individuals opposing development in their community? Well, I have, but this case – And so the question I'm – what I'm sort of getting – I don't know whether NIMBY's right or you're right, right, that local people want to tear down houses and build multifamily housing, right? That might be true. It might not be. I don't know. But what I can't tell from the record is why we should suggest the idea that NIMBY doesn't exist and instead the most pro-development people in Prince George's County are their residents. The difference here, Your Honor, between NIMBYism and selling tax liens to abandoned properties, which under the law are immediately foreclosable because it's expected that abandoned owners aren't going to redeem them, the difference is that the – you go – you purchase a tax lien with that right to immediately foreclose, whereas the professional investors in this case, they buy those liens not to develop or redevelop or purchase the property. They're in this case to have the owner redeem the tax lien and then pay the investor above market rate, interest rates, fees and interest. So the – Well, that's their ambition. I mean, they don't know until after they've bought the certificate – Well, they do – in some ways – – whether or not that's going to happen. Well, I think the record actually does show that they – the professional investors do a substantial amount of research. They look at the properties. They do take a risk. They don't know if it's going to be redeemed or not. But they're very careful in selecting the properties that they're going to bid on based on their belief on whether or not the owner's going to redeem it because that, as a professional investor, is how they make their money. So I think that is the difference here between, say, NIMBYism and development and the sale of a tax lien to abandoned property in particular. Is there record evidence that suggests that professional investors don't buy vacant land in tax liens? Vacant or uninhabited or – no, but as a matter of practice – I understand you're saying it. You're saying, oh, yeah, but these guys, they wouldn't dare buy vacant land because investors don't buy vacant land. But we sort of know that's not true, right? Well, the record reflects that, and it's been raised in the – Where would I find that in the record, that investors do not buy vacant land? We made that argument in our response brief, and it certainly wasn't contested. And so they could, but that's not how these investors make their money. And the best site for that is your response brief? Correct, and we described the general process. And the record evidence is the practice. But nobody testified to that. Correct. So your response seems to be a pretty strong argument to acknowledge that what the plaintiffs and folks like that do is a trade or business, a common calling. I would – the Attorney General has never said that tax sale investing is not a job or profession. But what the issue is under the analysis, under the first prong, is that the statute, Section 14817D, does not restrict a common calling or profession in any way. That's what's material to – Well, if you're not a resident of the county and you do that, whether it's a hobby or that's your vocation, you're unable to practice it at these limited auction sales in Prince George's County simply because you're not a resident. Well, earlier the court mentioned the McBurney case. Under that and the court's precedent, it's clear that in order to offend the privileges and immunities clause, in terms of a common calling, the statute on its face must directly prohibit, restrict, or regulate a certain profession or trade. And that's not what Section 14817D does here. And moreover – I don't understand that at all, right? You're saying – you just – I think you agree, as you've got to, that buying tax liens is a trade or business. And your statute says, if you don't live here, you can't do it. But it does not say – it does not mention any profession or trade, and that's what's required, and that's what McBurney was about. The statute – the FOIA statute – So in other words, if it says – if it says you cannot sell hats in the state of Maryland, but it doesn't mention the profession of being a hat seller, which is maybe a haberdasher, I don't know, whatever it is. Like, that can't be. Right? If you prohibit what somebody does, that is the direct prohibition of the trade. That doesn't make any sense to me. That's my understanding of McBurney, is that merely incidental effects limitations on a profession is not enough to violate the privileges and immunities clause. No. So help me understand. Why do you think that's what – McBurney says is, when you're not directly addressing commercial activity, right? So it's FOIA. Then we have this question about, is it still commercial in spite of that? But McBurney specifically doesn't apply where the regulation itself is of commercial activity. I mean, the point of McBurney is that FOIA is not itself a common calling or trade or business. But you agree that the buying of tax lien certificates is a trade or business. Right? So McBurney doesn't apply because it's addressing non-commercial activity, and this is a case that the whole regulation is about the buying of tax certificates. I don't understand McBurney to the opinion to say that obtaining FOIA and obtaining certain information was not a profession. Again, it was that defining – you must – in order to offend the privileges and immunities clause, one of the things – it must define a trade or profession at a high level of generality. So in Toomber, we're talking about commercial shrimp fishing. In Hickman, we're talking about oil and gas development. In the United Buildings case, we're talking about contractors who perform public construction. So I think when the appellant in McBurney tried to say, well, it's limiting my profession as a FOIA investigator, that was kind of a self-serving, narrow description of their job that the court didn't buy. And the statute didn't limit that. But what I would say that before we even get to – Anybody in here can make a FOIA application about just about anything that relates to the government. But it was the incidental effects that were referenced in McBurney that you just happened to have an individual who had found a commercial application for the FOIA statute that was atypical of any other FOIA application. But here, the buying of these tax certificates seems to be, in its essence, a commercial activity, whereas making a FOIA request is not. I'll respond by saying, well, in an initial matter, the prohibitions and the privileges and immunities clause are not absolute. So that's why some incidental limitation on a profession or trade, without directly mentioning that, is acceptable under the privileges and immunities clause. But we don't even get to the first and second analysis under the privileges and immunities clause in this case, because in this case, we're talking about the government's own commercial conduct. And the privileges and immunities clause does not apply to the government's own commercial activity. So United Buildings says that's wrong, right? It says the market participant exception of the Dormant Commerce Clause simply does not apply to the privileges and immunities context. So help me understand that. You said if they're doing something commercial, it doesn't count, right? And that's what the market participant exception is in the Dormant Commerce Clause. And United Buildings says no, that does not apply to the privileges and immunities, because they've got totally different purposes. What United Buildings said was that it would not mechanically apply from the Commerce Clause that particular private market, public market distinction. But what it did say was that there is a qualitative difference between public employment and private employment. So there is a distinction there to be recognized under the privileges and immunities clause. Right, at the second step, right? What the court's talking about in United Building and Hicklin is the second step, right? If it's protected, does that discrimination violate the clause? Because we know, as we talk about the second step here, differential treatment can be justified. And we look at a variety of factors to do that. And that's what Hicklin and United Building are telling us to do. And if it's government property, right, that might help provide a substantial reason. And we can then evaluate whether there's a close relation. I get all of that. But that's not at step one, which is whether it's a protected interest. Well, it is step one. And that's under the decision, City of Salem. And granted, it was by the Third Circuit Court of Appeals. But it borrowed from United Building and that difference between public and private conduct to reach that decision. And essentially what it said was there was no fundamental right to public employment, direct employment by the government. And so by extension, there is no right to buy a tax lien directly from the government. And the government can limit. That's true. So let's just take that for just a second. If that's true, doesn't that mean that United Building is wrong? Because if there's no fundamental right at step one to ever do anything with the government, then not only do you have a market participant exception to the Privileges and Immunities Clause, but it's stronger than the market participant exception that applies to the Dormant Commerce Clause. The point of all of that is it has to be step two. Because if it's a categorical step at step one, then United Building's suggestion that it's not a mechanical application is nonsensical. One of the reasons why the United Building and the city of Salem in particular is applicable here, because a key distinction in those cases which talked about public and private employment, and in this case, is we're talking about essentially tax collection. And tax collection is a quintessentially governmental function. But it's not tax collection, right? That's the tax collection. The tax is now collected. Any money that is then collected is a reimbursement to the investor, right? They're not an agent of the state, right? This is just like Piper. We don't think of lawyers as being agents of the state. The buyer of a tax lien is no more of an agent of the state than a lawyer is in Piper, right? They are, yes, but they work directly for the state, and again— Why do they work directly for the state? They just bought something from the state. Whatever they do, they make their own decisions, their own judgment about what to do. And whatever they succeed in getting goes to them, not the state. The state gets nothing more after they have sold the lien. Again, I fall back on the distinction here that it's not tax collection, but I believe that it is, and that is an important distinction in this case. So if we get to the second part of the privilege and immunity clause analysis, and if the statute here burns a fundamental right, the privileges and immunities clause tolerates some discrimination against nonresidents if there is substantial justification. There has to be substantial reason, and the degree of discrimination must bear a close relationship to that reason. As an initial matter, the appellants, the investors, have waived any argument about the substantial justification of the 2021 version of the law because in their opening brief, they only discussed the 2017 version. They didn't talk about the amendment to the limited auction where it only included abandoned properties, and they certainly didn't discuss the arrowing of veterans and federal employees. So by failing—so they talked about the wrong statute on appeal. So in terms of substantial justification, for all intents and purposes, there is no argument against that in terms of the 2021 version. How did the substantial reason change with the revised statute? It became more protectionist, right? It said, we want to keep more people out of the trade and business of buying tax liens. So tell me how it became a different substantial justification. Well, again, they didn't address it at all, so it just simply is a no. I agree. It doesn't appear that Maryland addressed it at all, but that's what I'm getting at. No, no, no. I meant the appellants didn't address the 2020— So the reason why—it's actually less protectionist. And again, it's because only tax liens to abandoned properties are sold during that initial limited auction. But there are a subset in the amended statute of what the original statute covered. Is that correct? So abandoned property was covered under the original statute, even though other properties were included. And in the later amended statute, even though it's limited to abandoned properties, they always have been included. There was never a distinction. That's correct. So under the prior—the 2017 version of the law, any and all properties—tax liens to any and all properties were sold during that limited auction. Subsequently, only tax liens to abandoned properties were sold during that initial limited auction. So I don't think there was a distinction made about abandoned properties in the old law, but now it's front and center. That's what comes first. And for a professional investor who's not really interested in buying those tax liens anyway, because there's a little to no chance of redemption, how is that offensive or discriminatory against them? They still have the right to participate with the rest of the general public to purchase the most lucrative tax liens. And, of course, Your Honors, don't have to address any of these arguments if it finds that the 2021 amendments to the law have mooted the investor's appeal. And Your Honors earlier cited Central Radio, but I believe Jordan versus the Democratic Party of Virginia actually— Why would it have mooted the appeal? If the abandoned property was included in the first statute, and it's still included in the second statute? So Jordan has several principles that answer Your Honors' question. And first of all, that as applied challenges, which we have here, to a newly amended statute are premature. There's simply no record here, and there was certainly no argument in the reply brief about why or how the investors will be harmed going forward under the new statute. Well, that's sort of the Central Radio argument, isn't it? Sure. And so those two are copacetic. The other point, and there's three that I'm going to make in total, is that there's no evidence of adverse effects on the new law, and simply pass exposures to harm does not present a live controversy. Do you represent that all of the plaintiffs in this case can buy at the limited auction under the new law? I believe none of them can. Okay. Thank you. Sorry. I thought you just said there was no adverse effect on them by the new law. There's no evidence of any adverse effect. They certainly haven't argued that under the new law going forward they can't. And the last thing I'll say is that although the residency preference is still in the law, it is no longer offensive to the appellant investors, and that's, again, because of the low desirability of tax liens to abandoned properties. So in conclusion, the Privileges and Immunity Clause does not apply here, and if it does, it does not impair a fundamental right, and it is substantially justified by the legislature's goal of community revitalization. Therefore, the Court should affirm summary judgment in favor of the appellees. All right. Thank you, Mr. Fein. Mr. Minnelli, you have some remaining time. Thank you, Your Honors. First, I want to just unpack a couple of the arguments that were made. I'll point the Court to page 24 of our opening brief, subsection 4 of that argument, which says that the Maryland legislature's amendment to the statute did not render it constitutional. We absolutely did address the amendment, and we argued that it didn't make it, you know, it fundamentally changed the fact that it was discriminating against nonresidents. Our case is that the statute's discriminating against nonresidents. There's nothing in our case that says that it's discriminating against out-of-state investors. Although that's part of what our clients do. It's still, they're nonresidents, and it still discriminates against them. The other thing that's interesting about their argument, again, and there's just nothing in the record to support it, and they cite none, is they say, well, you know, it's not offensive to investors because they don't want abandoned properties. Well, doesn't that concede the fact that investors aren't a cause of the harm that the statute's trying to address? But taking it a step further, the statute doesn't change the fact, doesn't change anything fundamentally about what was discriminatory about it in the first place. You ask the counselor, you know, are the plaintiffs allowed to participate? He said no. That's why it's not, it doesn't render it unconstitutional or constitutional. With respect to the fundamental right, you know, in the brief they were making an argument that the out-of-state tax sale buyers are essentially equivalent to like a public employee, you know, working as an agent of the government. And I just don't think that's a fair analogy. I don't think there's anything in the record to support that. They're participating in a transaction with the state. The state's getting paid the tax, but they're not working for the state. They're not getting employed by the state. There's no employer-employee relationship or anything like that. There's not even an independent contractor relationship. Your position is that the public employment line of argument, whatever it is and whatever the merits of it, simply doesn't apply to a commercial transaction because the Supreme Court has repeatedly told us that the nature of that public employment relationship is different from a standard commercial transaction. Yeah. Well, and also that's just not what it is. So, you know, you can't really look at those cases. You can't apply that analysis if that's not what the circumstances are. With respect to the amendment to the statute, again, the fundamental problems with the statute and what makes it unconstitutional hasn't changed. So I don't see any basis to send it back or to render the appeal moot because, you know, if anything, the statute is even more restrictive than it was when my clients filed their lawsuit. Judge Musetti, when he's, you know, and if there was no amendment, we would be arguing that what Judge Musetti did was essentially making it more restrictive and not correcting the offensive part of the statute. So in closing, it's a low bar. I mean, I'll admit it. It's a low bar to establish that there's a substantial reason for the discrimination against nonresidents. But it's still a bar. You have to have some evidence, and there is just no evidence. I understand that they've cited testimony of legislature, of legislators, and a letter from the Attorney General, which I would say is more in support of our argument. But you'd ask, you know, there's no evidence of, you know, any kind of numbers that show that when out-of-state tax sale buyers purchase a house that goes to foreclosure, that the property remains abandoned or that it contributes further to blight. There's just no evidence of that. And I think even in the record, when it talks about the tax sales, I mean, obviously, by its very nature, the participation is more limited. And so I think more money is generated when they have it open to more people, which, frankly, is better to, you know, it might be different now because it's only for abandoned properties. But it certainly generates more surplus proceeds for the homeowners to the extent there are proceeds. So in closing, we would ask the court to reverse the lower court and order that court to enter judgment in favor of the appellants. Thank you very much. Thank you very much. We appreciate the argument from both counsel. We're still under limitations as to what we can do after arguments. So our tradition of coming down and shaking hands is still not restored. So hopefully the next time you come back, we'll be able to do that. So with that, I'll ask the clerk to declare a brief recess while the attorneys change. And we'll be back shortly.
judges: G. Steven Agee, Julius N. Richardson, Henry F. Floyd